City of Amarillo v. J. E. Ware.

No. 5694. Decided June 10, 1931.
(40 S. W., 2d Series, 57.)

</div>

*Underwood, Johnson, Dooley & Simpson* and *Vance Huff,* for appellant.

This court judicially knows that the city of Amarillo is a city operating under the charter form of government. Subdivisions 16 and 17 of article 1175 of Vernon's 1925 Statutes gives to the city of Amarillo, the exclusive dominion, control and jurisdiction over its streets, avenues, alleys, highways, boulevards, and public grounds, and authorizes it to provide for the improvement of its streets, alleys, avenues, highways and boulevards, by paving, raising, grading, filling, draining, or otherwise improving the

same. Subdivision 29 of artcle 1175 gives it the authority to provide for a sewer system. Therefore, we see from this, that the matter of improving, grading, leveling, and draining of its streets and highways is a function formerly exercised by the state, which has been by the state expressly delegated to the city of Amarillo. We see that the above article uses the word "high-ways" in connection with "streets". A high-way is not necessarily and always a street, but a street is necessarily and always a highway. The matter of the construction of the highways has always been considered, since time immemorial, essentially a governmental function.

As a first authority that the improvement of its streets and the draining of same, by the city of Amarillo, through the construction of a storm sewer, was the exercise of a governmental function, as distinguished from a purely municipal function, performed for the exclusive benefit of its own people, or for financial gain, we submit the case of Wooster v. Arbenz by the Supreme Court of the State of Ohio, reported 156 N. E., 210, and fully annotated 52 A. L. R., 518.

The appellee will argue in this case that because the construction of the storm sewer in question, by the city of Amarillo, was a labor intended primarily for the benefit of its own population, that even though no financial gain was sought, this still made the work a municipal, and not a governmental business. The argument will be made that any work, engaged in by a city, voluntarily for the benefit of its own population and to secure their greater convenience and comfort, is purely a municipal function, as distinguished from a governmental function, even though no financial gain results. If this argument were sound, the maintenance of a fire department by a city would be a municipal and not a governmental function; the maintenance of the city health department, which is maintained for the benefit of its own urban population, would come under the same head. Wooster v. Arbenz, 52 A. L. R., 521; Douglas v. County Court of Roane County, 22 A. L. R., 585; Emmons v. City of Virginia, 188 N. W., 561.

In the case of Nelson v. Spokane, 176 Pacific, 149, 104 Wash., 219, it was held that a municipal corporation in operating a public park without deriving profit therefrom, was performing a governmental function, and in the absence of negligence it was not liable for damages resulting from the construction of a dam across a stream in the part, in such a manner that it obstructed the stream, to the damage of the plaintiff's property.

A public park is certainly a thing maintained by a city for the pleasure and benefit of its own urban population, but the following cases all hold that in maintaining a public park, for the benefit of its people, a city is engaged in a governmental and not a municipal function: Kellar v. Los Angeles, 179 Cal., 605, 178 Pac., 505; Pennell v. Wilmington, 7

Penn., 229, 78 Atl., 915; Cornelisen v. Atlanta, 146 Ga., 416, 91 S. E., 415; Warrenton v. Smith, 149 Ga., 567, 101 S. E., 681; Hibbard v. Wichita, 98 Kan., 498, L. R. A., 1917, A, 399, 159 Pac., 399; Park Commrs. v. Prinz, 127 Ky., 460, 105 S. W., 948; Bolster v. Lawrence, 225 Mass., 387, L. R. A., 1917 B, 1285, 114 N. E., 722; Clark v. Waltham, 128 Mass., 567; Steele v. Boston, 128 Mass., 583; Heino v. Grand Rapids, 202 Mich., 363, L. R. A., 1918 F, 528, 168 N. W., 512; Caughlan v. Omaha, 103 Neb., 726, 174 N. W., 220; Bisbing v. Asbury Park, 80 N. J. L., 416, 33 L. R. A. (N. S.), 523, 78 Atl., 196; Green v. City of Amarillo, 244 S. W., 241.

We contend that notwithstanding the plaintiff plead and the evidence showed that the cause of the overflow to the plaintiff's land was a concrete storm sewer erected by the city, which is a permanent structure, yet because the plaintiff plead and the evidence showed that there had been no total destruction of the land by any given overflow, but on the other hand the pleadings and evidence show that the land was only subject to intermittent overflows in times of rain which overflows occurred at varying intervals and were in varying amounts and produced varying degrees of damage and plaintiff is not entitled to recover in one action for the value of his real estate as permanent damages measured by the difference in the market value of his land before and after the opening of the storm sewer, but on the other hand he is restricted to successive actions for such special damages as he might show were occasioned by each successive overflow. Indiana Co-op. Canal Co. v. Gray, 184 S. W., 242; G., C. & S. F. Ry. Co. v. Helsley, 62 Texas, 593; Stephenville North & South Texas Railway Co. v. Yates, 148 S. W., 837; City of Wichita Falls v. Sullivan, 22 S. W. (2nd) 982; Sabine & East Texas Ry. Company v. Johnson, 65 Texas, 393; G., C. & S. F. Ry. Co. v. Haskill, 23 S. W., 546.

Again we say that it is the policy of the law to give the plaintiff the right in such cases as this through successive actions to recover the damages occasioned by successive floods. The object of this policy of the law is to induce the defendant, by requiring him to pay proper damages, to abolish the cause of the injury while at the same time paying the plaintiff for only the injury suffered. It is not and should not be the policy of the law to allow the plaintiff to recover in one action not only the damages already accrued, but damages of the prospective and continuing nature which cannot be determined with certainty.

The trial court permitted the plaintiff to plead and prove and recover for what he claimed to be the difference in the market value of his land before and after the opening of the storm sewer as permanent damages, and at the same time, over the defendant's objection, the trial court allowed the defendant also to prove what would have been the value of crops that would have grown on his land and that he would have

marketed except for the opening of the storm sewer. To our minds this was a double recovery, because it not only allowed the plaintiff to recover the total depreciation in the value of his land as measured by its value before and after the opening of the storm sewer, which depreciation was chargeable to the storm sewer, but at the same time it allowed him to recover the fruits of what his land would have produced but for the depreciation in value.

*Works & Bassett,* for appellee.

We submit that under the record in this case said first question should be answered "No" because the acts of the city of Amarillo complained of herein in the disposition of its storm sewer waters were performed in furtherance of corporate functions rather than in the execution of governmental functions, such acts being voluntarily exercised for the advantage, benefit, comfort, convenience, health and enjoyment of the inhabitants of said city as contradistinguished from the public at large, and such acts were not subject to the control of the state as an agency thereof. City of Ft. Worth v. Wiggins, 5 S. W. (2d) 761; Community Natural Gas Company v. North Texas Utilities Co., 13 S. W. (2d) 184; Brewster v. City of Forney, 223 S. W., 175; City of Clarendon v. Betts, 174 S. W., 958; 43 C. J., pp. 921 to 925, including note (A) at page 922, distinguishing governmental and corporate powers.

Both appellee's pleadings and the evidence fully and definitely sustain permanent and ever abiding damages to his land properly measuring his damages by the difference in its market value before and after its injuring, in that the nuisance complained of herein was constructed by public works in the nature permanent and which are not subject to being abated by any method within appellee's power, these works being treated by appellant as permanent and their continued use being necessarily and continuously injurious to appellee's real property in at least the following particulars, all of which are manifest from the statement made of the case by said Court of Civil Appeals. Baugh et al. v. T. & N. O. Ry. Co., 80 Texas, 56, 15 S. W., 587; Rosenthal v. Taylor, 79 Texas, 325, 15 S. W., 268; M. K. & T. Ry. Co. v. Williams, 5 S. W. (2d) 575; City of Clarendon v. Betts, 174 S. W., 958; C. M. Muncy v. Ft. Worth & Denver City Ry.; Sanders v. Miller, 113 S. W., 996; St. L. & S. W. Ry. Co. v. Wilson, 273 S. W., 622, 20 R. C. L., 465; Holderbaum v. Hidalgo Co. W. I. District, 297 S. W., 865, affirmed by approval of Supreme Court, 11 S. W. (2d) 506; City of Bowie v. Hill, 258 S. W., 568; City of Austin v. Bush, 260 S. W., 300.

It must be remembered that as the matter of permanent damage to the land, *all of the overflows* of 1928 and 1929 contributed to the permanency of the damages complained of and in producing and fixing the difference in the market value of the land before the sewer was opened and when appellee sold his land in the latter part of 1929, the washing

of soil and the cutting of the land into ditches and by drains continuing during all of this time and all of said time being required to produce and definitely fix the total of said permanent damage to the land, and that the little items totaling about $200 which was claimed in addition to this permanent damage to the changing of the market value in the land by said continuing and finally consummated permanent physical injury to the land, affected only the one crop that had already matured and was cut but yet on the land when the May 18, 1928, overflow washed it away and destroyed it, and the immediately next preceding crops following that cutting that immediately grew up and were produced on the land before the large and most destructive overflow of August 13, 1928; hence, under all the authorities as well as reason and justice, the court properly heard the testimony complained of as to the value of these crops so destroyed.

Mr. Justice SHARP delivered the opinion of the court.

This case is before the Supreme Court upon certified questions from the Honorable Court of Civil Appeals of the Seventh District.

The case originated in the district court of Potter county. J. E. Ware sued the city of Amarillo, alleging that he owned a certain tract of land situated about two and one-half miles from the city limits; that his land is located in a natural draw or drain, and is composed of rich valley land and some inferior upland and a large part thereof is sub-irrigated which made it subject to cultivation, upon which valuable crops could be grown. That during the latter part of the year 1927 and the first part of the year 1928 the city constructed and put into service a system of storm sewers, which was completed about April, 1928, and storm water from over a large part of the city was thrown therein. That the system of storm sewers drains some 1,200 or 1,500 acres of land in the city, the streets and alleys of a large portion of which are paved, and other portions of which are covered by roofed buildings, which prevent water soaking in the ground. That the water is finally thrown into one large sewer pipe, the outlet of which is eight or more feet across. That the natural drainage for the water falling in the city is to the southeast and to the west and northwest. That prior to the installation of the system of storm sewers, the water falling in the city drained in that direction. That the city diverted the water by collecting it in the storm sewers, and throwing it to the north side of the city on to and across the land owned by Ware. That the city, in order to divert the water from its natural drainage and force it through the outlet to the north, it was necessary, and the city did sink the pipe forming the outlet for the water in that direction to a depth of about thirty feet, digging through a natural ridge of ground in the north part of the city for the purpose. Theretofore, the natural ridge had prevented the water falling in the city from flowing in a northerly direction and no part of the water falling in the city had theretofore at any time flown on to or across any of Ware's land.

That since the completion of the sewer system and the diversion of the water from its natural drainage, the result has been that Ware's land has been overflowed and washed and crops growing thereon have been injured and destroyed. That the land has been overflowed each and every time any considerable rain has fallen in the city and since the completion of the sewer system the land has been frequently overflowed, the depth and width of the overflow varying according to the amount of rainfall in the city and all of the overflow contributing proximately to the damage herein claimed. That the land is so situated that the natural drainage of the territory in which it is situated would be through and across same, said draw or drain passing diagonally across the land about the middle thereof, but that at no time since the completion of the sewer system has the rainfall in that territory been of sufficient amount to have overflowed any of the land to any great extent, nor has it been of sufficient amount to have damaged any of the land or injured or destroyed the crops growing thereon. That the water overflowing the land from the sewer remained thereon for a much longer period of time than the water naturally draining across the land, causing same to remain for periods of time running from four or five hours to as long as eighteen hours and on three or more occasions since the completion of the storm sewer the land has been overflowed and washed when there was no rain at all in the territory that would naturally drain across plaintiff's land. That the water flowing in that territory and naturally draining across the land was an insufficient amount to have overflowed more than a small portion of the land and same would not have remained thereon more than an hour or so at the most and would not have flowed with sufficient force to have washed any of the land or damaged or destroyed the crops growing thereon. That the water so diverted by the city is thrown into the pipes forming the sewer system at great speed and in great quantities. That all of the pipes are made of smooth hard material and are placed in the ground so as to give a rapid fall. That the outlet pipe being given a fall of several feet from the city to where it is emptied out in the north part of the city, the water being thrown thereby out of the pipe with great force and at great speed and in such quantities that when it reaches the land, practically all of which is low level land, it is caused to spread over and overflow same in such way and to remain thereon for such length of time that the land and the soil thereof is washed and carried away and the crops thereon are injured and destroyed. That up to the present time the rainfall in the city, and the territory drained by the storm sewers, are of such capacity that said outlet pipe has at no time been full. That more territory in the city is included in the storm sewer system as now laid out, which will be connected up with the sewer system and drained thereby and as more streets in said area so drained by the storm sewer are paved, the amount, force and speed of the diverted

water will be greater and same will be diverted on to and across the land in greater speed and force and caused to spread over the land to a greater depth, thereby ruining and completely destroying the value of the land for the purposes for which the owner has been using same and for which it is suited. That the sewer system is permanent and the additional territory in the city will be permanently drained in the future thereby. That the land has been so damaged and appropriated by the city by so using same for an outlet for the sewer water and same is and will continue to be a permanent damage and appropriation of the land, the diversion of the water on to and across the owner's land having been done by the city without the consent and over the protest of the owner.

Ware further alleges that he is the owner of fifteen acres of the land above mentioned and has erected valuable and permanent improvements threon for his use as a home, including a house, fences, orchard, etc.; that two acres of the land is sub-irrigated and is valuable for the raising of garden truck, fruits, alfalfa and other valuable crops and products; that about two acres of the land has been so washed that there is now a sag in same upon which water will stand; that plaintiff's fences have been washed away, etc.; that the value of the land has been practically destroyed.

There are many other allegations in plaintiff's petition which tend to amplify the allegations above set forth, together with the allegations as to the crops destroyed and the value thereof.

Plaintiff prays for a judgment for actual damages, both special and permanent, and for general and special relief, both in law and in equity, etc.

The defendant city presented to the trial court a general exception and several special exceptions, claiming that the plaintiff is not entitled to recovery, in substance, for the following reasons:

(a) Because that the claim asserted by plaintiff against the city is a claim for damages alleged against the city in the doing and performing of acts of a purely governmental nature, as contradistinguished from those acts of a municipal corporation resulting in monetary gain to it, and that the voluntary acts were for the benefit of the population of such municipality.

(b) That the land owned by plaintiff, damages to which is sought to be recovered, is located north of the city and in a natural drain or draw, and that the natural drain of water falling in the city is to the west and northwest and that the plaintiff's land is located in the bed of the natural drain or draw and located to the north of the city in the direction of the natural drainage of the city.

(c) Because there is no allegation in plaintiff's petition affirmatively alleging that the watershed drained by the natural draw or drain in which

plaintiff's lands are located was increased in size or area by the construction of the storm sewer complained of by the city.

(d)  There is no allegation that a larger territory of land is caused to drain its surplus water on to plaintiff's land by virtue of the construction of the storm sewer than would otherwise have been done.

(e)  Because plaintiff does not allege that what was done by the city towards carrying out its plan of installing its storm sewer system that in grading and paving of its streets it was in any manner negligent or that such grading and paving work was negligently done so as to injure the plaintiff and that under the law the city being a municipal subdivision of the state cannot be liable for damages to the plaintiff in grading and paving its streets, etc., unless the grading and paving is negligently done.

(f)  Because it is not shown that street grading, street paving and street improvements resulting in a change of direction in the flow of surface water falling in the city was in any manner negligently done.

(g)  Because it is not shown in plaintiff's petition that the natural area of drainage or watershed was enlarged by the storm sewers in question.

(h)  That plaintiff's petition as a whole in attempting to state a cause of action against the city for damages for alleged permanent injury to the plaintiff's land by virtue of the overflow of water thereon in question is defective, because under the law the court judicially knows that if the plaintiff has been damaged as alleged by him, such damage may be remedied by construction of other drains.  Therefore, damages in the nature of permanent damages to the land in question cannot be recovered but only such damages as are actually sustained by the plaintiff up to the date of the trial of the cause can be recovered.

The Court of Civil Appeals in its certificate refers to the petition and the answer filed in the trial court.  The following questions are certified:

"First:  Does the plaintiff's petition as a whole disclose that the plaintiff's claim against the city for damages is based upon acts of the City's employees which are and were of a purely governmental nature as distinguished from acts purely municipal which resulted in financial gain to said city?

"Second:  It being admitted that there is no allegation or proof of negligence in the construction of its pavement or sewer by the city, can the plaintiff recover in the absence of such allegation and proof?

"Third:  The plaintiff, having plead 'that since the completion of said sewer system and the diversion of the water falling in said defendant city from its natural drainage and forcing same on to and across plaintiff's land, same have been overflowed each and every time any considerable rain has fallen in said defendant city, and that since the completion of the sewer system and the diversion of said water, said lands have been overflowed on or about the following dates, to-wit: May 11, 13, 16, 1928,

June 26, 1928, July 21 and 22, 1928, August 12, 1928, October 31, 1928, November 13, 1928, November 16, 17 and 18, 1928, March 27, 1929, May 11 and 17, 1929, and August 6, 1929, the depth and width of said overflow waters on said lands varying according to the amount of the rain falling in said defendant city'; there being no pleadings contained in the plaintiff's petition to the effect that storm sewer water flows through the storm sewer in question and across the plaintiff's lands at all times, and the evidence having shown that plaintiff's land was overflowed only at intermittent intervals when rain fell in the City of Amarillo, and that the different overflows were in varying depths and amounts and produced varying degrees of damages, but the plaintiff, having plead and the evidence having shown that the storm sewer in question which diverted the water on to the plaintiff's lands where it would not have flowed but for said storm sewer, was a concrete structure of permanent nature, will the plaintiff's petition and the evidence support a recovery of permanent damages to the land as measured by the difference between the reasonable market value of the plaintiff's land before and after the opening of the storm sewer in question, or will the plaintiff be restricted to the recovery of special damages predicated upon damages occasioned by successive overflows?

"Fourth: The damage to plaintiff's land having been alleged to be permanent and the recovery thereof being based upon irrevocable and permanent injury, was it proper for the Trial Court to admit evidence of the value of the crops alleged to have been destroyed?"

The rule is firmly established in the Constitution and decisions of this state that "no person's property shall be taken, damaged or destroyed for, or applied to, public use without adequate compensation being made, unless by the consent of such person." Section 17, Article 1, Constitution of Texas; Ft. Worth Improvement Dist. No. 1 v. Ft. Worth, 106 Texas, 148, 158 S. W., 164, 48 L. R. A. (N. S.) 994; Gulf, C. & S. F. Ry. Co. v. Fuller, 63 Texas, 467; McFadden v. Jefferson Co. Drainage Dist. No. 6 (Texas Com. App.), 4 S. W. (2d) 33; Gainesville, H. & W. Ry. Co. v. Hall, 78 Texas, 169; Powell v. Ry. Co., 104 Texas, 219, 135 S. W., 1153, 46 L. R. A. (N. S.) 615; Texas & P. Ry. Co. v. Hardin (Texas Civ. App.), 168 S. W., 1017 (writ refused); Southern Traction Co. v. Fears (Texas Civ. App.), 199 S. W., 856 (writ refused).

Many decisions of the courts of this state are in harmony in holding that cities, drainage districts, levee improvement districts, etc., which are defined under the law as governmental agencies, are responsible for damage or injury to a person's property inflicted in the performance of their acts and functions primarily for the benefit of those within the corporate limits of the municipality.

Brewster v. City of Forney (Texas Com. App.), 223 S. W., 175;

Hidalgo County Water Improvement District v. Holderbraum (Texas Com. App.), 11 S. W. (2d) 506; City of Fort Worth v. Wiggins (Texas Com. App.), 5 S. W. (2d) 761; Ostrom v. San Antonio, 94 Texas, 523, 62 S. W., 909; White v. City of San Antonio, 94 Texas, 313, 60 S. W., 426; City of Galveston v. Posnainsky, 62 Texas, 127, 50 Am. Rep., 517; Hidalgo County Water Control & Improvement Dist. No. 1 v. Peter et al. (Texas Com. App.), 37 S. W. (2d) 133.

However, the rule is recognized that a municipality is exempt from liability when it performs a duty imposed upon it as the arm of agent of the state in the exercise of a *strictly* governmental function, *solely* for the public benefit. That the exemption of a governmental agency from liability pertains only to those acts or functions which are performed as the agent of the state in furtherance of general law for the interest of the public at large, as distinguished from those acts and functions intended primarily for the benefit of those within the corporate limits of a municipality. McQuillin on Municipal Corporations (2nd Ed.), vol. 6, secs. 2792 and 2793; City of Ft. Worth v. Wiggins, supra; Ostrom v. San Antonio, supra; White v. City of San Antonio, supra; City of Galveston v. Posnainsky, supra.

A statement of the rule that where a municipality is acting as the arm or agent of the state in the exercise of a strictly governmental function solely for the public benefit, which would exempt it from liability for its acts, when considered in the light of the facts involved in this case, contained in the foregoing certificate, clearly shows that the City of Amarillo does not come within the rule announced. It is quite evident that the acts complained of were done not in the exercise of a strictly governmental function solely for the public benefit, but it was done primarily for the benefit of that portion of the public within the corporate limits of the city.

We answer Question No. 1. "No."

In answer to the second question, we will say that the language used in section 17 of article 1 of the Constitution, which in effect says that no person's property shall be taken or damaged without just compensation, has no exception or limitations attached thereto. It is a plain, pointed, definite statement of a rule which prevails in this state and the liability for compensation of property damaged or taken is not predicated upon the theory that the tortious act was done negligently or intentionally. In McQuillin on Municipal Corporation (2d Ed.), sec. 2792, page 759, that distinguished author, in discussing the liability of a municipality for its torts in the performance or non-performance of municipal or corporate duties as distinguished from governmental duties, announces the following well recognized rule: "In other words, where its officers or servants are in the exercise of power conferred upon the municipality for its private benefit or pecuniary profit, and damage results from their negligence or

misfeasance, the municipality is liable to the same extent as in the case of private corporations or individuals."

This rule seems to be founded upon the well recognized principles of law and equity and is fully sustained by the decisions of this state, as well as by opinions from the courts of many other states. Ostrom v. City of San Antonio, supra; City of Ft. Worth v. Wiggins, supra; Brewster v. City of Forney, supra; Cawthorn v. City of Houston (Texas Com. App.), 231 S. W., 701.

We answer Question No. 2 "Yes."

The pleadings and proof show that the sewer system constructed by the city of Amarillo is a permanent structure; that it is so considered and treated as being permanent. That the sewer system was completed in April, 1928, and soon thereafter by reason thereof the water was thrown on and across the land of plaintiff with a greater force and in larger quantities than was done before the construction of the system. That the water will remain on the land much longer and to a higher depth than ever before. That the city contemplates enlarging the sewer system which will increase the flow of water across plaintiff's land in the future. That the land has been washed and injured to such an extent that it is permanently damaged.

The case of Rosenthal v. T. B. & H. Ry. Co., 79 Texas, 325, 15 S. W., 268, 269, involved the measure of damages alleged to have resulted to a lot of land from the construction of a railroad and the operation of its trains in front of the property. Judge Gaines, in speaking for our Supreme Court in reviewing the authorities bearing upon this rule, says:

" 'If it results from a cause which is either permanent in its character or which is treated as permanent by the parties, it is proper that the entire damage should be assessed with reference to the past and probable future injury.'

"The language quoted is peculiarly applicable to this case. The controlling rule in actions for injuries resulting from similar nuisances would seem to be to adopt in each case that measure of damages which is calculated to ascertain in the most certain and satisfactory manner the compensation to which the plaintiff is entitled. When the injury is liable to occur only at long intervals, or when the nuisance is likely to be removed by any agency, the damages which have accrued only up to the time of the action will be allowed; but if the nuisance is permanent, and the injury constantly and regularly recurs, then the whole damage may be recovered at once. In a case like this the resulting depreciation in the value of the property is the safest measure of compensation. Here it may be inferred from the evidence that the injury recurs upon each considerable rain-fall, and continues during a stage of offensive stagnation until the water evaporates. The defendants seem to have treated the work as permanent, since they have failed, upon application, to make a culvert for

the passage of the water; and we are of opinion the depreciation in the value of plaintiff's property is the most certain measure of his damages for the injury."

The rule stated above has been followed by a line of decisions and now seems to be a well established rule prevailing in this state.

Baugh v. T. & N. O. Ry. Co., 80 Texas, 56, 15 S. W., 587; Gainesville, H. & W. Ry. Co. v. Hall, 78 Texas, 169, 14 S. W., 259, 9 L. R. A., 298; Denison, B. & L. Ry. Co. v. Barry, 98 Texas, 248, 83 S. W., 5; Brewster v. City of Forney (Texas Com. App.), 223 S. W., 175.

In the case of Baugh v. Railway Company, supra, the Supreme Court re-affirms the rule announced and says:

"When a nuisance is created by the construction of works in their nature permanent, and which, as sometimes occurs in case of works for a public use, are not subject to be abated, the rule is that all damages resulting therefrom to property may be recovered in one action, and the proper measuer of damages is the depreciation in the value of the property. Rosenthal v. Railway, 79 Texas, 325, 15 S. W., 268; Railway v. Hall, 78 Texas, 169, 14 S. W., 259. That rule also applies when the injury resulting from the nuisance is of a permanent character."

As applied to the facts of this case, the rule is now well established in this state that the measure of damages for a permanent injury to plaintiff's land is the difference in the reasonable market value thereof immediately before and immediately after the injury. Trinity & S. Ry. Co. v. Schofield, 72 Texas, 496, 10 S. W., 575; Hidalgo County Water Control and Improvement District No. 1 v. J. R. Peter (Texas Com. App.), supra; City of San Antonio v. Mulley, 11 Texas Civ. App., 596, 33 S. W., 256; Railway v. Barry, supra; Missouri, K. & T. Ry. Co. v. Dennis (Texas Civ. App.), 84 S. W., 860; T. & P. Ry. Co. v. Ford, 54 Texas Civ. App., 312, 117 S. W., 201; Owens v. Navarro County Levee Improvement District No. 8 (Texas Civ. App.), 281 S. W., 577.

This rule rests upon the proposition that the result of a recovery upon such a cause of action means full compensation for all the injuries growing out of the construction of the sewer system and embraces not only the past, but future overflows, as well.

In some cases where the construction of the improvements and the injury complained of by reason thereof were closely related in point of time, the rule has been stated that the measure of damages for permanent injury to land is the difference in the market value just prior to the time of the construction of the improvements and immediately subsequent to such improvements. Owens v. Navarro County Levee Improvement District No. 8, 115 Texas, 263, 280 S. W., 532; Southern Traction Co. v. Fears (Texas Civ. App.), 199 S. W., 856; Texas Central Ry. Co. v. Brown, 38 Texas Civ. App., 610, 86 S. W., 659.

Generally speaking, the rule last stated is not flexible enough to meet

the ends of justice in all cases. As in this case, the sewer system was con-structed, perhaps in good faith, upon the belief that the water passing through the sewer system would be handled in such a way as not to inflict any injury upon the land of plaintiff or anyone else, yet, when put to the actual test, it was shown that this theory was wrong, and as a result of the construction of the sewer system and the water diverted from its natural course, it was clearly demonstrated that plaintiff's land was damaged. It is well known that the rainfall in Texas, during certain periods, is scant, and it would be impossible to ascertain what damages would be inflicted upon land or other property by reason of the con-struction of certain improvements until put to the actual test. In other words, where the result is uncertain, the owner of property, if he so desires, has the right to wait and see what the result will be when the improvements are subjected to an actual test. Again, for instance, if a municipality, or any other governmental agency, should undertake to con-struct certain permanent improvements which would require several years to complete and during the construction of the improvements, or a part thereof, certain property should be destroyed or permanently injured, it would be violative of every principle of right and justice to compel the owner to wait until the completion of the improvements before a suit could be maintained for a recovery of the damages sustained.

It follows from what we have said that the pleadings and proof sup-port a recovery for permanent damages to the land as measured by the difference between the reasonable market value of the plaintiff's land before and after the opening of the storm sewer in question, and that plaintiff will not be restricted to the recovery of special damages predi-cated upon damages occasioned by successive overflows.

In answer to the fourth question, the record discloses that the plaintiff having sued for the permanent injury to his land was entitled to recover as the true measure of his damages claimed the difference in the value of the land immediately before and immediately after the injury. In addi-tion to the damages sustained to his land, he was entitled to recover as a measure of damages to his then growing crops thereon the difference between the value of the crop just before and just after the damage. This rule has been so well discussed and the authorities bearing thereon reviewed in the case of Raywood Rice Canal & Milling Co. v. Langford Bros., 32 Texas Civ. App., 401, 74 S. W., 926 (writ refused), we quote from the opinion as follows:

"The measure of damages in such a case is stated to be the difference between the value of the crop just before and just after the damage. In speaking of the value of the growing crop at the time of the injury, of course was meant its value for the purpose of continuing its cultivation to maturity, for in most, if not all, cases, it would be valueless for any other purpose. In ascertaining its value, proof must be heard either as to

the market price or its intrinsic worth, and it follows that any witness who undertakes to speak intelligently as to its value must base his figures upon a sound estimate of what the crop would probably produce if well cultivated and uninjured, and to deduct from that result the cost of cultivation and marketing."

It is further said:

"In Ry. Co. v. Pape, 73 Texas, 503, 11 S. W., 526, Justice Gaines, in a case involving damage to a growing crop, after stating the rule in substance as above, and remarking upon the fact that usually there would be no market for such a thing, uses the following language: 'It follows that in such a case some other method must be resorted to for the purposes of ascertaining its value. It seems to us that, as a general rule, the most satisfactory means of arriving at the value of growing crops is to prove its probable yield under proper cultivation, the value of such yield when matured and ready for sale, and also the expense of such cultivation, as well as the cost of its preparation and transmission to market. The difference between the value of the probable crop in the market, and the expense of maturing, preparing, and placing it there, will in most cases give the value of the growing crop with as much certainty as can be attained by any other method.' It is apparent from the language quoted that our Supreme Court has taken into consideration and adopted the methods which the ordinary witness as to value will naturally and logically employ in speaking to the value of a growing crop, and thus the court is indirectly influenced and controlled in such an inquiry by the estimated yield. The following Texas cases have followed the rule as stated: Ry. Co. v. Borsky, 2 Texas Civ. App., 545, 21 S. W., 1011; Ry. Co. v. Simonton, 2 Texas Civ. App., 558, 22 S. W., 285; Ry. Co. v. McGowen, 73 Texas, 355, 11 S. W., 336; Ry. Co. v. Pape, 73 Texas, 501, 11 S. W., 526; Ry. Co. v. Joachimi, 58 Texas, 456."

See Ry. Co. v. Schofield, supra; F. W. & N. O. Ry. Co. v. Wallace, 74 Texas, 581.

The record shows that the sewer system was completed in 1928 and that damages to the land and crops growing thereon resulted during that year from overflow water caused from the completion of the sewer system. Evidence was introduced tending to show the condition and value of the crops injured during the year 1928 at the time the land was injured and also with respect to the crops growing thereon in 1929. Plaintiff had the right to introduce testimony with reference to the condition and value of his crops growing on the land in 1928 at the time the land was injured and had the right to recover damages sustained by him to the crops growing thereon at that time. All other evidence with reference to damages to crops grown on the land during other years would not be admissible, except for the purpose of showing the extent of the injury to the land, its

failure to grow crops thereon as it did before the injury, and to show the market value of the land at the time of its injury.

In view of the nature of Question No. 4, it cannot be answered categorically "Yes" or "No."

We recommend that the foregoing questions be answered as indicated.

The opinion of the Commission of Appeals answering the certified questions is adopted and ordered certified.

C. M. CURETON, Chief Justice.