## METHODIST ORPHANAGE et al. v. STATE.
### No. 1503.

Court of Civil Appeals of Texas. Waco.
June 21, 1934.

Rehearing Denied July 12, 1934.

■

Kyle Vick and Geo. W. Barcus, both of Waco, and Coker & Rhea, of Dallas, for appellants.

Willard McLaughlin and Sam Dardnne, both of Waco, for the State.

ALEXANDER, Justice.

The state of Texas, acting through the commissioners' court of McLennan county, brought this suit against the Methodist Orphanage, as owner, and Bankers' Life Company, as lienholder, to condemn certain land for use in building a state highway. The jury awarded damages to the defendants in the sum of $3,490. Feeling that the amount awarded was insufficient, the defendants appealed.

The Methodist Orphanage owned approximately 135 acres of land east of the city of Waco and near the city limits thereof. Most of said land is situated immediately south of certain railway lines. The state desired to condemn 14.8 acres of said land for the purpose of building an overpass for a public highway over said railway lines. The highway when constructed will run north and south across appellants' land, leaving 5.3 acres thereof on the west side of said highway and 116 acres thereof on the east side of said highway. The jury found that the land sought to be taken for the purpose of building said highway was of the value of $200 per acre; that the damage to the 5.3 acres on the west side of said highway amounted to $100 per acre, but that the market value of the land on the east side of the highway would not be reduced by the construction of the highway.

■ The appellants contend that the finding of the jury that the construction of the highway would not reduce the market value of that part of their land immediately on the east side of said highway is contrary to the evidence. We have reviewed the evidence very carefully and have reached the conclusion that this assignment must be sustained. At the time of the trial the state had taken charge of the land sought to be condemned and had constructed a large part of the dump necessary for the overpass. This dump is 7 feet high where it enters appellants' land on the south and 30 feet high where it crosses appellants' north line at the railway tracks. The land in question is worked largely by the children from the Methodist Orphans' Home situated in the north part of the city of Waco and is used for growing fruits and vegetables for that institution. The residence and most of the other improvements on said land are situated about 800 feet east of the new highway. Prior to the construction of the new highway the Methodist Orphanage maintained a private graveled road through said tract from east to west. This road was used for travel between the improvements on the eastern part of the farm and the city of Waco. The dump for the new highway blocks this gravel road so that in order for one to travel from the city of Waco to that part of the land east of the highway it is necessary for him to follow the old gravel road from the west to the dump, then turn north along by the side of the dump for a distance of approximately 400 feet, pass through an underpass at the railway tracks, then turn south along the east side of the dump for a distance of approximately 400 feet back to the graveled road. No other means has been provided for travel between the eastern part of said farm and the city of Waco. Appellee's own witnesses testified that the land over which one would be required to travel in going from the old gravel road to said underpass on one side of the dump, and back to the gravel road to the other side of the dump, was such that it could not be traversed with an automobile or truck during wet weather and that it would cost at least $200 to construct a gravel road over the territory in question. It is apparent that a part of appellants' land will have to be taken out of cultivation and used for the new roadway on each side of the dump. There is no evidence tending to show that the building of the new highway will in any wise contribute to the enhancement of the value of appellants' land on the east side of the road. We are unable to understand just how the jury reached the conclusion that the building of a high dump across said land in such manner as to prevent the use of the existing gravel road leading directly to appellants' land, and to require the building of a new road with the inconvenience of travel over a more circuitous route as revealed by the record, would not reduce the value of the land in question. While the orphanage could not recover separately for the cost of building a new entrance to the land in question, nor for the inconvenience resulting from having to travel over a more circuitous route in reach-

ing the same, yet these were items to be taken into consideration in determining the amount of damages occasioned to the land not taken by the state. Currie v. Glasscock County (Tex. Civ. App.) 212 S. W. 533.

■ In the light of the above facts, it cannot be fairly and reasonably said that appellants' land east of the new highway was not damaged by the construction of said dump. The verdict of the jury therefore is contrary to the evidence. The rule is well established in this state that "no person's property shall be taken, damaged or destroyed for, or applied to, public use without adequate compensation being made, unless by the consent of such person." City of Amarillo v. Ware, 120 Tex. 456, 40 S.W.(2d) 57, at page 60, par. 1.

The judgment of the trial court is reversed, and the cause remanded for a new trial.