JEFFERSON COUNTY DRAINAGE DISTRICT NO. 6 V.
H. C. LANGHAM.

No. 5935. Decided November 28, 1934.
(76 S. W., 2d Series, 484.)

*Oliver J. Todd* and *J. B. Morris,* both of Beaumont, for appellant.

Appellant, Jefferson County Drainage District No. 6, did not perpetrate against appellee, Langham, an actionable wrong by

digging drains and ditches and deepening the natural drainage system within its boundaries, thereby greatly accelerating the flow or drainage of the surface waters within its boundaries, causing Taylor's Bayou to overflow its banks and to flood appellee's land more often and to a greater extent and to a greater depth than before these improvements were made by appellant to its natural drainage system. 9 R. C. L., 620, 644, 650; Houston & T. C. Ry. Co. v. City of Dallas, 98 Texas, 396; Chicago, B. & Q. Ry. Co., v. Illinois Drainage Dist., 200 U. S., 561.

*Howth, Adams & Hart,* of Beaumont, for appellee.

The drainage district was liable for the damage done, even if the damage resulted without any negligence on the part of the district; but as a matter of fact, and as found by the trial court the damage directly resulted from negligence on the part of the drainage district in that (a) in constructing an extensive system of drainage improvements it caused a greater accumulation of water and a greater accelerated flow thereof into the natural streams, which caused their overflow; (b) in discharging into the natural streams more water than their capacity could carry; (c) and in failing to construct levees along the banks of the bayou, as recommended by engineer. Hidalgo County Water Control & Imp. Dist. v. Peter, 37 S. W. (2d) 133 (Com. App.); Fort Worth Imp. Dist. v. Fort Worth, 106 Texas, 148, 158 S. W., 164, 48 L. R. A. (N. S.) 994; City of Amarilo v. Ware, 120 Texas, 456, 40 S. W. (2d) 57 (Com. App); Texas Constitution, Art. 1, sec. 17.

MR. PRESIDING JUDGE HARVEY delivered the opinion of the Commision of Appeals, Section A.

In this case the Court of Civil Appeals at Beaumont has submitted the following certificate containing three certified questions:

"Jefferson County Drainage District No. 6 was legally organized as a drainage district under the provisions of Chapter 7, Title 128, of the Revised Civil Statutes, and embraces within its boundaries the northern and eastern portions of Jefferson County. There is included within the boundaries of this district the City of Beaumont and some of the smaller towns of the county and much valuable agricultural and grazing land. All the territory within the district is low, level land, only a few feet above sea level, the highest point being about thirty-five feet. Before appellant improved its natural drainage system, the natural streams within the district were sluggish, crooked and failed to drain properly the land within the district. Jeffer-

son County and the surrounding counties are subject to prolonged and heavy rainfalls. The natural drainage within this district was through Hildebrandt's Bayou and its tributaries, and the north fork of Taylor's Bayou and its tributaries, which have their sources within the district. Hildebrandt's Bayou, and the north fork of Taylor's Bayou, empty into Taylor's Bayou, which empties into the Sabine-Port Arthur navigation canal near the City of Port Arthur. This canal originates near the town of Sabine Pass on the Gulf of Mexico and skirts the western and northern shores of Sabine Lake to an intersection with the Neches River at the point where the river empties into Sabine Lake. Taylor's Bayou empties into the canal ten or twelve miles from Sabine Pass. The territory within the drainage district was improved by straightening and deepening and cleaning out its natural drainage system and digging new drainage ditches. This work done upon the natural drainage system of the district hastened the flow of the waters falling thereon and greatly improved the drainage within the whole district. Before these improvements were installed a large part of the territory within the district was low swamp land unfit for cultivation and dangerous to the public health. These conditions were improved by the improvements just discussed.

"At the time of the organization of this district and to the time this case was tried, appellee owned 8,000 acres of land, all of which was outside of the district, lying adjacent to the south side of Taylor's Bayou and west of the Sabine-Port Arthur navigation canal. All of this land lies within the gulf coast salt marsh territory and was only from two to five feet above sea level and, before appellant improved its natural drainage system, was subject to periodical overflows both from the waters of the Gulf of Mexico and from Taylor's Bayou. Adjacent to appellee's land Taylor's Bayou is a very large stream, in fact, an arm of the Gulf of Mexico, and subject to the ebb and flow of the tides. The banks of this bayou, though well defined, are very low. Before appellant improved its natural drainage system appellee's land was valuable for stock grazing, farming and for trapping muskrats. After the improvements above discussed were made, because of the acceleration of the flow of waters from the territory within the boundaries of the district, caused by the improvements made within the district, appellee's land was rendered more subject to overflow and the overflow waters would rise to greater heights.

"It was shown that the plaintiffs land is situated on Taylor's Bayou below the mouth of Hillebrandt Bayou and that the

nearest improvements to plaintiff's land made by the district, on Hillebrandt's Bayou, was 4½ miles above plaintiff's land, and that the nearest improvements above plaintiff's land on Taylor's Bayou was 14 miles distant. The lowest improvement on Hillebrandt's Bayou was the straightening of the channel with a dredge, so as to have a top width of 81 feet and depth of about 9 feet, and the square foot area of the cross section of the cutoff amounted to 554 square feet. That below the cutoff, there was a natural Bayou of which a similar cross section of the same showed 1255 square feet, or in other words the natural Bayou had a volume of over twice the size of the cut-off flowing into the same, and the Bayou was at said point a tidewater stream. Taylor's Bayou below the mouth of Hillebrandt's Bayou and opposite plaintiff's land, showed a cross section area of 2129 square feet. Taylor's Bayou below the mouth of Hillebrandt Bayou and opposite plaintiff's land was shown to have a greater volume than the combined volume of the improvements which flowed into the same from Hillebrandt Bayou and Taylor's Bayou.

"This suit was instituted by appellee against appellant for damages resulting to him proximately from the increased overflow of his land caused in the manner just explained, and for cause of action he plead the facts substantially as stated above, and further as follows:

" 'The said overflow of plaintiff's land and the damages therefrom as hereinafter shown, were caused directly and proximately by and through the negligence of the defendant and its authorized commissioners as follows:

" '(a) They carelessly planned and constructed the said drainage system, ditches and laterals, so that the natural and rain water of a large section of the County of Jefferson were diverted from their natural courses and drained and conveyed into Taylor's Bayou, as aforesaid, which said stream was of insufficient capacity and without banks of sufficient height safely to contain and convey both its own and the said drainage system waters at times when there are heavy rains, whereby the said waters were caused to greatly overflow the south bank of said bayou and the west bank of the said canal; in to which said bayou empties;

" '(b) They further carelessly and negligently failed and omitted to construct dikes or levees of such size, strength and height along the south and west bank of said bayou and the west of said canal that same would be sufficient to contain and

keep the said waters in the bayou and canal and thus prevent flooding of adjacent lands, as aforesaid.'

"Defendant's answer is very lengthy, consisting of general and special demurrers, general denial, pleas of limitation and many special defenses not necessary, for the purpose of this certificate, to be given in detail. The trial was to the court without a jury, with judgment in appellee's favor for $19,-500.00, supported by conclusions of fact not specifically attacked by appellant in so far as they relate to this certificate, except insofar as its assignments raise the issue that appellee neither plead nor proved a cause of action. As these conclusions of fact are important for a full understanding of the questions herein certified, we give them in full:

" 'I find that Jefferson County Drainage District No. 6 has been duly established and is existing under and by virtue of Revised Civil Statutes of Texas (1925) Articles 8097 and 8193 incl.

2.

" 'I find that legal service was had upon such district and that having answered herein it is before the court for all purposes.

3.

" 'I find that plaintiff is now and was at the time of the injuries complained of the owner in fee simple of approximately eight thousand (8,000) acres of land located south of and riparian to Taylor's Bayou and west of the Sabine-Neches Ship Canal. Location thereof being more definitely shown by reference to "Plaintiff's Exhibit 3-11-7-29 H. C.", plaintiff's said land being marked off with a red line and the surveys or sections thereof marked with red "x" marks.

4.

" 'I find that plaintiff's said land is located as aforesaid in Jeffereson County, and is outside of but contiguous to the said drainage district and the land here involved being separated only by Taylor's Bayou and both being reparian to said stream.

5.

" 'I find that previous to the construction of the drainage system in defendant district that plaintiff's land was valuable, fit for and devoted to farming, grazing, hog raising, trapping and other profitable uses.

6.

" 'I find that said drainage system has in no way benefitted plaintiff or plaintiff's said land.

**7.**

" 'I find from the evidence that since June 1, 1925, up to the present, plaintiff's land as described in his petition, has been overflowed on several occasions as a direct result of the construction of the drainage district and the manner of the construction of its drains.

**8.**

" 'I find from the evidence relating to the climatic conditions and the manner in which the drains of said drainage district are constructed, that there will probably be in the future similar overflows, with more or less frequency.

**9.**

" 'I find that subsequent to the construction of such drainage system that plaintiff as owner of said land has been actually damaged (since June 1, 1925), by the acts complained of to the extent of $19,500.00.

**10.**

" 'I find that the damages sustained by plaintiff as the owner of said land and as allowed by the judgment herein accrued subsequent to June 1, 1925, and that such damages were the direct result of the overflows occurring since June 1, 1925.

**11.**

" 'I find that such damages in the sum of $19,500.00 were the direct and proximate result of defendant's wrongful acts done for the benefit of defendant drainage district, without compensation to or benefit to plaintiff or plaintiff's said land.

**12.**

" 'I find that defendant by the exercise of ordinary care could have prevented such damages by building a levee on the south and west bank of Taylor's Bayou, which failure to exercise ordinary care was negligence in defendant's construction and maintenance of such system of district improvements proximately causing damage to plaintiff as the owner of said land in the sum of $19,500.00.

**13.**

" 'I find that, without the consent of plaintiff and without compensation to plaintiff, defendant changed the drainage in the natural drainage basin for the benefit of owners of property in said district and for the benefit of said district to the

injury of plaintiff as the owner of land outside of said district thereby proximately damaging plaintiff in the sum of $19,500.00.

### 14.

" 'I find that defendant changed and altered the natural drainage in said district and neighboring lands by greatly widening, deepening, straightening and extending the natural channels and by running many new laterals thereto thereby greatly increasing and accelerating the flow of surface water in a wide territory into said natural channels and draining therein large volumes of water, which prior to said drainage system, did not reach said natural channels, thus increasing the volume of water in Taylor's Bayou, Hillebrandt's Bayou and the ship canal greatly beyond their natural capacity, without providing proper outlets or safeguards for such volumes of water, thereby flooding plaintiff's land and proximately damaging plaintiff as owner of it in the said sum of $19,500.00.

### 15.

" 'I find that the drainage district and its drainage system is a plan or scheme for the improvement and enhancement in value of lands and property within defendant district.

### 16.

" 'I find that said drainage system has greatly increased the value of the land and property located within said district.'

"The case is regularly before us on appeal duly perfected by appellant.

"* * * We deem it proper to certify to Your Honors the following questions arising upon the facts certified and material to the proper disposition of this appeal.

### "QUESTION NO. 1.

"Did appellant perpetrate against appellee an actionable wrong by digging drains and ditches and deepening the natural drainage system within its boundaries, thereby greatly accelerating the flow or drainage of the surface waters within its boundaries, causing Taylor's Bayou to overflow its banks and to flood appellee's land more often and to a greater extent and to a greater depth than before these improvements were made by appellant to its natural drainage system?"

At the threshold of this discussion, all considerations of negligence on the part of the drainage district will be discarded.

Undoubtedly an action lies against a drainage district, in

favor of a citizen whose property is damaged as a result of the maintenance of drainage improvements made by the district under statutory authority. City of Amarillo v. Ware, 120 Texas, 456, 40 S. W. (2d) 57, and authorities cited there. The action lies even though no negligence, on the part of the district, occurs in respect of the construction or maintenance of the improvements. The liability of the district in such a case arises under and by virtue of the provision of our State Constitution (Sec. 17, Art. 1), which provides that "No person's property shall be * * * damaged or destroyed for, or applied to, public use without adequate compensation being made", etc. (Authorities referred to above.)

■ Counsel for the drainage district herein contends in effect that the provision of the Constitution does not govern this case for the reason that the damage to Langham's property, which results from the operation of said drainage improvements, is *damnum absque injuria*. As support for this contention, it is claimed that inasmuch as Taylor's Bayou is the natural outlet for surface waters originating in the territorial area of said drainage district, the district has the right to collect the surface waters of the district and accelerate the flow thereof into said stream, by means of the drainage improvements in question. Generally speaking, the district has such a right, to be sure, but the right is not an unqualified one. It cannot be lawfully exercised in disregard of natural conditions which restrict the capacity of the stream. North Dakota v. Minnesota, 263 U. S., 365 (68 L. Ed. 342, 44 Sup. Ct., 138) and authorities there cited; 67 C. J., 879, footnote 55. In this connection we adopt the following language of the decision just cited:

' "One owning land on a water course may, by ditches and drains, turn into it all the surface water that would naturally drain there, but he may not thus discharge into the watercourse more water than it has capacity to carry, and thus burden his lower neighbors with more than is reasonable."

■ It appears that the flow of the waters of Taylor's Bayou, in the lower reaches of that stream, is affected by the ebb and flow of the tide and by other natural conditions. While all these conditions are proper subjects for consideration in determining the fact question as to the capacity of said stream, none of them affords a legal excuse to the drainage district for causing Langham's property to be damaged.

The first certified question should be answered "yes". Answers to the other questions are thus rendered unnecessary.

: Opinion adopted by the Supreme Court November 28, 1934.