**MEAT PRODUCERS, INC., Appellant,**

v.

**Robert S. McFARLAND, Appellee.**

**No. 17747.**

Court of Civil Appeals of Texas, Dallas.

Jan. 14, 1972.

Rehearing Denied Feb. 17, 1972.

408

Frank J. Scurlock, Turner, Rodgers, Winn, Scurlock & Sailers, Dallas, for appellant.

Roland Boyd, Boyd, Veigel & Gay, McKinney, for appellee.

GUITTARD, Justice.

The principal question is whether a cattle feeding facility emitting disagreeable odors when in operation amounts to a nuisance justifying recovery of permanent damages to adjacent land measured by reduction in market value, even though at the time of trial cattle feeding had been suspended and no odors were being pro-duced. We hold that it is such a nuisance and that such damages are recoverable.

Plaintiff Robert McFarland owned 645 acres of land adjacent to a tract upon which defendant Meat Producers, Inc. had constructed an elaborate cattle feeding facility, referred to in this record as a "feed lot." The facility had been in operation for more than a year, but was shut down and all the cattle had been removed several months before trial. Plaintiff sued for reduction in market value of his land, alleging that operation of the feed lot was a permanent nuisance in that it created offensive and disagreeable odors which substantially interfered with use and enjoyment of his land and reduced its market value by $335 per acre. The jury found in answer to special issues that operation and maintenance of the feed lot created a nuisance as to McFarland's land, that such nuisance proximately caused injury and damage to the land in such manner as to cause substantial depreciation in the value, that such damage is permanent, that the value of the land at the time of trial with the feed lot adjacent was $176,732.05, and that its value at that time if the feed lot had not been adjacent would have been $263,491.42, a difference of approximately $135 per acre. The trial court rendered judgment on the verdict for the amount of the difference, and defendant appeals.

We consider first defendant's contention that the evidence does not support the finding of nuisance because it shows nothing more than slight or trifling inconvenience, discomfort or annoyance, which will not justify recovery of damages to real estate. This contention is overruled.

The evidence shows a cattle feeding operation of considerable magnitude. The feed lot consists of ninety-six metal pens, each designed to hold 125 cattle, accessory shelters and feed bunkers, eight metal grain storage tanks on concrete foundation, each with a capacity of three million barrels, loading and unloading pens, water tanks, an office building, scales, concrete

roads and alleys, and ditches, lakes and lagoons for disposal of surface water. Cattle feeding began December, 1968, and by June, 1969, was in full operation. In January, 1970, more than 14,000 cattle were in the feeding pens and in the "catch pens" nearby. The cattle were fed in 120-day cycles, that is, each pen was filled to capacity with incoming cattle, which were kept and fed for 120 days, and the pen was not cleaned out until those cattle were removed and the pen was made ready for the next lot. Manure and urine dropped in the pens by the cattle produced an odor which, according to plaintiff's witnesses, was strong and disagreeable and was carried over adjacent land by the wind, particularly in damp and humid weather. Since plaintiff's land lay north, west and south of the feed lot, the odor came over some part of his land except on relatively rare occasions when the wind was from the west. Testimony of plaintiff, his tenant, and a number of neighbors, was sufficient to establish that the odor as it came upon plaintiff's land was frequently so disagreeable and offensive that it would seriously disturb and annoy persons of ordinary sensibilities and thus substantially interfere with the use and enjoyment of the land. Plaintiff's evidence also showed that the feed lot attracted flies and birds to the area, that the cattle made considerable noise, and that there were some instances of escape of polluted water. However, the claim of nuisance rests primarily on offensive odors.

■ This evidence raises the issue of private nuisance, that is, a condition which substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities attempting to use and enjoy it. Sherman Gas & Electric Co. v. Belden, 103 Tex. 59, 123 S.W. 119 (1909); City of Temple v. Mitchell, 180 S.W.2d 959 (Tex.Civ.App., Austin 1944, no writ).

■ Defendant insists that any discomfort or inconvenience caused by odors from the feed lot was slight and trivial because no one was living on plaintiff's land either when the feed lot was in operation or at the time of trial. It was being used only to raise crops and graze cattle. Even raising crops and grazing cattle require human activity on the land from time to time, and anyone engaged in such activities while the feed lot was in operation would have to endure the odor. However, the Supreme Court has held that damages recoverable for nuisance are not measured by reduction in value of land for the actual use to which it is put, but rather by reduction of its market value, considering any use to which it may be appropriated. Sherman Gas & Electric Co. v. Belden, supra. By the same reasoning, in determining the existence of a nuisance, the jury is not limited to consideration of the actual use of the land. It would be illogical to hold that reduction in market value for any use is the measure of recovery for damages from nuisance, but that a nuisance exists only if there is interference with the actual use to which the land is being put at the time of trial. Plaintiff's appraiser testified that the highest and best use of the land was homesites with acreage, and since there was evidence that odors from the feed lot would substantially interfere with that use, we hold that there was evidence to support the finding that a nuisance existed.

■ Defendant argues that there is no evidence to support recovery based on nuisance for reduction in market value of the land because the odor caused no physical damage to the land itself, and plaintiff's petition claims only damages to the land rather than injury to the person. We do not agree that damages to land from nuisance are limited to physical disturbance of the soil or water. A nuisance is by definition a non-trespassory invasion of another's interest in the use and enjoyment of land. Restatement, Torts, § 822. Such an invasion may be by pollution of the air as well as by disturbance of the soil. An offensive odor in itself may be sufficient

interference with the use and enjoyment of land to entail liability for permanent damage. City of Temple v. Mitchell, supra.

■ For similar reasons we hold that the trial court properly included in its definition of "nuisance" the words, "and which condition would be substantially offensive, discomforting and annoying to persons of ordinary sensibilities, tastes and habits living in the locality where the premises are situated." Defendant objected that this part of the definition was appropriate to damage to persons, but not to damage to property, which was the only damage claimed. Since, as we have held, the gist of an action for nuisance is reduction in market value of land because of unreasonable interference with its use or enjoyment by persons of ordinary sensibilities, considering any use to which it may be adapted, recovery of damages for nuisance is not confined to physical disturbance of the soil, even when no one is currently living on it. Consequently, use of this language is appropriate to a claim for damages to land as well as injuries to a person.

■ Defendant also contends that there is no evidence of unreasonable interference with the use of plaintiff's land in view of the character of the community. Defendant argues that a feed lot is a lawful and useful business, and that if such a facility cannot be operated in a purely rural area such as northeast Collin County, there are few places where it can be operated. For the purpose of determining liability for damages, interference with use of land may be unreasonable, even though utility of the activity causing such interference is great and the harm is relatively small, since it may be reasonable to continue a useful activity causing such interference if payment is made for the harm, but unreasonable to continue it without paying. 4 Restatement, Torts, 224. The evidence raises the issue that continued operation of the feed lot would be unreasonable without compensation for damages resulting from interference with the use of adjoining property.

■ A more difficult question is raised by defendant's contention that plaintiff should not be permitted to recover for reduction in value of his land on the theory of a permanent nuisance, since the operation of the feed lot had been suspended several months before trial and no interference with the use of plaintiff's property from odors or other causes was occurring at the time of trial. In our opinion suspension of the cattle feeding does not establish as a matter of law that the damage to plaintiff's land was temporary rather than permanent. The evidence indicates that operation of the feed lot was discontinued because the current price of cattle had made the feeding operation unprofitable at that particular time. Although the court sustained defendant's objections to direct questions concerning defendant's intentions and plans for future operations, there was ample evidence that operations would probably be resumed. After all cattle were removed, defendant completed paving the alleys between the pens with reinforced concrete so that the pens could be cleaned out in bad weather, and also installed a water purification system. The plant itself remained intact and a skeleton payroll was retained so that full operations could be resumed at any time. Defendant had invested approximately $2,000,000 in facilities which were not adaptable to any other use. Plaintiff's appraiser testified that a complete dismantling of the feed lot would be necessary to restore the value of plaintiff's land because otherwise the cattle feeding could be resumed at any time.

From this evidence the jury was justified in concluding that the cattle feeding would be resumed and carried on from time to time in the future whenever economic conditions should be favorable. Consequently, we cannot say as a matter of law that either the nuisance or plaintiff's damages were only temporary.

**412**

This holding follows established precedents. The controlling principle is to adopt in each case that measure of damages which is calculated to ascertain in the most certain and satisfactory manner the compensation to which the aggrieved landowner is entitled. Rosenthal v. Taylor, B. & H. Ry. Co., 79 Tex. 325, 15 S.W. 268 (1891). If the injury is likely to occur only at long intervals, or the nuisance can easily be abated by removing the cause, only the damages which have accrued up to the time of trial will be allowed, measured by the temporary reduction in the value of the use of the property, and future damages must be left for later litigation. Baugh v. Texas & N. O. R. Co., 80 Tex. 56, 15 S.W. 587 (1891); City of Austin v. Bush, 260 S.W. 300 (Tex.Civ.App., Austin 1924, writ dism'd). On the other hand, if the installation causing the injury is permanent, and the injury is likely to recur constantly or regularly, then the whole damage may be recovered at once, measured by reduction in market value of the land. City of Amarillo v. Ware, 120 Tex. 456, 40 S.W.2d 57 (1931); Rosenthal v. Taylor, B. & H. Ry. Co., supra. We hold that the latter rule is applicable to the facts of this case. Though the cattle feeding operation had been suspended at the time of trial, the jury was justified in concluding that it was likely to be resumed at frequent intervals and to be continued on each resumption for substantial periods of time. Consequently the jury was justified in finding that the damage was permanent, and the court was justified in awarding recovery for the reduction in market value.

Defendant objected to the trial court's definitions of "permanent" and "temporary," and to the issue inquiring whether the damage to plaintiff's property as a result of the operation of the feed lot was permanent or temporary, on the ground that the definitions and issue were related to damage to the land rather than to nuisance, and contends that in the absence of a finding of permanent nuisance,

the trial court erred in rendering judgment for plaintiff for reduction in the market value of the land. We overrule this contention because the ultimate issue was permanence of the damage or injury rather than permanence of the nuisance. None of the cases cited, or any others that we have found, support defendant's contention that recovery of reduction in market value must be based on a finding that the nuisance, as distinguished from the damage, is permanent. In Bay Petroleum Corp. v. Crumpler, 372 S.W.2d 318 (Tex.Sup.1963), an issue inquiring whether "the condition of nuisance" was temporary or permanent was not answered, and no issue was submitted inquiring whether the damage was permanent. The Supreme Court held that in the absence of a finding that the condition complained of was permanent, there could be no recovery for depreciation in the market value. In Wichita County Water Improvement Dist. No. 1 v. McGrath, 31 S.W.2d 457 (Tex.Civ.App., Amarillo 1930, writ ref'd), the jury found that the *injury* to plaintiff's land from seepage from defendant's dam was not permanent, and the court held that the measure of damages for maintaining a nuisance "from which temporary injury to the real estate results" is not the difference in market value but difference in the rental value for the period involved. Substantially the same question as the "injury" issue in *McGrath* was submitted in the present case by issue no. 4. In City of Austin v. Bush, 260 S.W. 300 (Tex.Civ.App., Austin 1924, writ dism'd), no issue was submitted inquiring whether either nuisance or damage was permanent, and the court correctly held that since there was evidence that the nuisance was only temporary, the difference in market value could not be recovered.

These authorities cited by defendant, as well as others we have examined, lead us to the conclusion that in determining the measure of damages to land resulting from nuisance, permanence of the nuisance is relevant only insofar as it establishes permanence of the damage, be-

cause it is only for permanent damage to land that reduction in market value may be recovered. City of Amarillo v. Ware, 120 Tex. 456, 40 S.W.2d 57 (1931). The rules concerning the measure of damages to land from nuisance are particular applications of the general measure of damages for permanent and temporary injuries to land, which apply also in cases of negligence and trespass. Trinity & S. Ry. Co. v. Schofield, 72 Tex. 496, 10 S.W. 575 (1889); Weaver Construction Co. v. Rapier, 448 S.W.2d 702 (Tex.Civ.App., Dallas 1969, no writ); Whitehead v. Zeiller, 265 S.W.2d 689 (Tex.Civ.App., Fort Worth 1954, no writ). Ordinarily it makes no difference whether the jury finds that the nuisance is permanent or the damage is permanent, since a permanent nuisance may be presumed to result in permanent damage. Thus in Baugh v. Texas & N. O. Ry. Co., 80 Tex. 56, 15 S.W. 587 (1891), the Supreme Court states the rule that where a nuisance created by a permanent installation is not subject to be abated, the measure of damages is depreciation in value of the adjoining property and adds: "That rule also applies when the injury resulting from the nuisance is of a permanent character." The *Baugh* case was followed in City of Merkel v. Smith, 458 S. W.2d 940 (Tex.Civ.App., Eastland 1970, no writ), in which the jury found, as in the present case, that the damage was permanent, but no issue was submitted inquiring whether the nuisance was permanent. The Eastland court held that the trial court did not err in failing to instruct the jury that the legal test as to whether a nuisance is temporary as distinguished from permanent is whether it can be abated at reasonable cost. The court went on to say that where a nuisance has produced permanent injury to land, the measure of damages is the difference in market value of the land before and after the injury, without regard to whether the nuisance itself might subsequently be abated.

◼ In light of the above authorities, we hold that the element of permanence was properly submitted in issue no. 4, inquiring whether the damage to plaintiff's land was permanent or temporary.

Defendant also attacks the damage findings on the ground that the testimony of plaintiff's appraiser was based entirely on speculation. The appraiser testified that the prices of farm and ranch land in the area and elsewhere in Collin County were no longer controlled by agricultural productivity, but had risen sharply since the early 1960's because of the movement of population northward from the Dallas metropolitan area. He said that the highest and best use of the McFarland land was as homesites with acreage, typically of about five acres, and that in his opinion the land would be worth $460 per acre at the time of trial if the feed lot had not been built. He testified further that since people seeking rural homesites would have many locations to choose from, they would not want to build a home next to a feed lot because of potential odors. Consequently, his opinion was that the value of the land with the feed lot next to it depended on what it would produce as agricultural land, and even its value for that purpose would be reduced by the feed lot, so that it was worth only $125 per acre.

◼ Defendant argues that this testimony is too speculative because there was no evidence of sales of small tracts in the area for rural homesites. We overrule this contention. It is not necessary to assume that the property is ripe for subdivision into five-acre tracts to accept as probative the opinion of plaintiff's appraiser that with the movement of population northward from the Dallas metropolitan area, prices of farm and ranch land in Collin County are influenced by demand for country homes. Neither is it unreasonable to suppose that its desirability for that purpose, as well as for farm and ranch purposes, is substantially reduced by the proximity of a feed lot which, even when lawfully and carefully operated, produces a strong and disagreeable odor. The appraiser's estimate was not based on the price of small tracts in a developed subdi-

**414**

vision. We interpret his testimony, rather, to be his opinion of the present market value of the land as a whole, as influenced by its prospective use for homesites. This testimony is within the limitation set out by the Supreme Court in City of Austin v. Cannizzo, 153 Tex. 324, 267 S.W.2d 808 (1954), as follows:

"In the willing seller-willing buyer test of market value it is frequently said that all factors should be considered which would reasonably be given weight in negotiations between a seller and a buyer. 29 C.J.S. Eminent Domain § 159, page 1023. This would exclude consideration of purely speculative uses to which the property might be adaptable but wholly unavailable but would permit consideration of all uses to which the property was reasonably adaptable and for which it was, or in reasonable probability would become, available within a reasonable time."

 Defendant's last contention is that a new trial should be ordered because of a remark made by the trial judge in the presence of the jury. The record shows that after plaintiff's counsel, Mr. Roland Boyd, had cross-examined defendant's real estate expert at some length, the judge said in the presence of the jury: "Mr. Boyd, we are going to take a time out to give the Republicans time to prepare a rebuttal." The record does not show that "Republican" is an uncomplimentary term in Collin County, or that it tends to arouse prejudice or hostility in a Collin County jury. We cannot take judicial notice of the political persuasions of the jurors. Though the reference to partisan politics in the course of the trial was improper, defendant has not discharged its burden to show that it probably influenced the verdict. Consequently, we cannot say that it amounted to such a denial of the rights of defendant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case. Tex.R.Civ.P. 434.

Affirmed.