## SOUTHERN TRACTION CO. v. FEARS.
### (No. 7804.)

(Court of Civil Appeals of Texas. Dallas. Oct. 27, 1917. On Rehearing, Jan. 5, 1918.)

1. EMINENT DOMAIN ⬦⟹293(1)—ACTION FOR DAMAGES—SUFFICIENCY OF PETITION.

A petition alleging that plaintiff was the owner of a lot abutting on a main city street and that defendant built along and over the street a permanent viaduct in front of the lot at a height of about 25 feet, and which obstructed part of the street, so as to practically destroy the lot for residence or business purposes, without her consent or any compensation, and resulted in damage, stated a cause of action.

2. EMINENT DOMAIN ⬦⟹271—CONSTRUCTION—DAMAGE TO ABUTTING PROPERTY.

Every abutting owner has an interest in the full width of a street, and, if it is obstructed by a railway so as to damage the sale or rental value of the property, has a right of action for damages.

3. EMINENT DOMAIN ⬦⟹298 — ACTION FOR DAMAGES—EVIDENCE.

In an abutting owner's action for damages to his property by the construction of a street railroad viaduct occupying part of the street, evidence that it prevented the improvement on that side of the street, or any evidence of special damage to the lot, was admissible on the question of damages.

4. EMINENT DOMAIN ⬦⟹303 — MEASURE OF DAMAGES.

In such action, the measure of damages is determined by the value of the lot immediately before, and its value immediately after, the construction of the railroad.

On Rehearing and for Additional Conclusions of Fact.

**5. EMINENT DOMAIN ☞300 — ACTION FOR DAMAGES—INSTRUCTION.**

In an abutting owner's action for damages from the construction of a street railroad viaduct occupying part of the street, evidence *held* to justify the conclusion of fact made by the Court of Civil Appeals that the structure prevented the building of residences or business houses on the opposite side of the street.

**6. EMINENT DOMAIN ☞303 — INJURY TO ABUTTING PROPERTY—ELEMENTS OF DAMAGE.**

In such action, interference with ingress and egress and with light and air are not the only elements of damages to private property from the structure.

**7. EMINENT DOMAIN ☞69—OCCUPATION OF STREET—FRANCHISE—LIABILITY FOR DAMAGES.**

That a street railroad viaduct raised above ground was authorized by the city council did not absolve the street railroad company from damages resulting from its construction.

Appeal from District Court, Ellis County; F. L. Hawkins, Judge.

Action by Mrs. M. E. Fears, prosecuted after her death by T. P. Whipple, executor, against the Southern Traction Company. Judgment for plaintiff, and defendant appeals. Affirmed.

J. L. Gammon, of Waxahachie, and Templeton, Beall & Williams, of Dallas, for appellant. Tom P. Whipple and Supple & Harding, all of Waxahachie, for appellee.

RAINEY, C. J. Mrs. M. E. Fears brought this suit to recover damages against appellant for the construction of an interurban railroad track and viaduct in and along Washington street in the city of Waxahachie; she alleging that she owned a lot fronting 48 feet on said street; that said street was one of the most important and prominent business streets and thoroughfares in said city until the construction of said railway tracks thereon; "that the country south of Waxahachie and adjacent thereto is thickly settled country, whose prosperous inhabitants frequently attend said city and do their trading therein, and Washington street leads from the public square of said city and over and across creek in said city, which said creek was spanned by a bridge about 100 yards long, and was, prior to the construction of said railway over and along said Washington street, and over and along said bridge, generally and commonly used by the people living south of Waxahachie in coming to the said city, thereby making the said Washington street a much-used thoroughfare and thus contributing to the value of plaintiff's property for a good business site, but that the effect of the building of the said railway and viaduct, as aforesaid, and the operation of cars over the same, as aforesaid, has greatly lessened the travel over the said street, and has almost caused the abandonment thereof by persons coming from the said country south of Waxahachie into the said city, and has caused the abandonment of said street almost entirely by persons driving teams thereon; that prior to the construction of the said railway the east side of said Washington street immediately in front of or facing the said viaduct was valuable business property, and business interests and houses were being builded and extended along the west side of the said street, but that the building of said viaduct and operation of cars thereover, as aforesaid, has almost totally ruined the said east side of said street for business or other purposes especially the property of plaintiff as above described."

Appellant answered, denying specifically each and every allegation of the petition, and answered specially that it had a franchise from the city council of Waxahachie to construct said railway and said viaduct and operate same along said Washington street; that the width of said street from curb to curb is 40 feet; said viaduct is built along the east curb and occupies a space of 10½ feet, leaving unobstructed 29½ feet on the west side of the same; that said viaduct just in front of appellee's lot is about 20 feet high between the piers or columns upon which the viaduct rests and open in front of appellee's lot and through which traffic can freely pass; that appellee's lot is vacant and has always been, and is of greater value since the building of the said railway than just before; that the railway serves as a street railway through the city of Waxahachie; that its line from Dallas to Waco is operated as a through line by electricity for the purpose of transporting passengers, for carrying baggage, trunks, etc., using attractive cars, known as express cars, running two to four cars a day, and with which express matter is carried; that said railway is not an additional servitude upon the street as a steam railroad; and that for this purpose it is necessary that the public square and Washington street be occupied, which is usual and customary throughout the country, and results in great benefit to the citizens of Waxahachie and vicinity in bringing people to Waxahachie, and adds greatly to the value and prosperity of the community and without any detriment to any one.

After bringing suit Mrs. Fears died testate, leaving T. P. Whipple independent executor, who duly qualified and prosecutes this suit by proper amendment. The case was tried and special issues were submitted to a jury, whose answers were returned, and the court rendered judgment for appellee.

The first assignment of error is:

"The court erred in rendering judgment upon the findings of the jury, because even with such findings, under the pleadings and the undisputed proof, plaintiff was not entitled to recover, and the verdict and judgment were contrary to the

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

law and evidence, and are not supported by the evidence."

A charter was granted by the state of Texas in 1912 to construct an interurban railroad from Dallas to Waco through the city of Waxahachie, which it so constructed. It procured a franchise from the council of said city to construct said road over and along Washington street, which runs practically north and south; also to construct a viaduct over certain steam railroad tracks and Waxahachie creek, which runs through said city across Washington street, said viaduct being for the purpose of operating the electric railway. Washington street was 40 feet wide from curb to curb, and said road was built along the east side of said street near the curb, and occupying about 10½ feet of space, leaving 29½ feet on the west which was unobstructed and was paved even under the viaduct. The viaduct was built on piers about 20 feet high, and was open for a considerable distance, especially in front of plaintiff's property, through which traffic could pass. Plaintiff owned a vacant lot fronting 48 feet on the west side of said street, which was not suitable for residences and was suitable for business houses, such as warehouses, blacksmith shops, or like structures, wagon yards, etc. The structure prevented the building of residences or business houses on the east side of the street, and plaintiff had no interest on said east side. Traffic was diverted to some extent from said street by the building of the viaduct to the street just west. Plaintiff's lot was vacant, and had been a long time with no structure thereon. Said structure was properly built under the supervision of the city engineer and operated with only the necessary noise incident to such railroads.

On the question of damages the testimony of the witnesses was conflicting, but there was sufficient to sustain the amount found by the jury. .

[1, 2] The proposition submitted by appellant under the first assignment of error is:

"Where, under the material, undisputed, and controlling facts in the case, plaintiff has no cause of action, the court should render a verdict for the defendant, or instruct the jury to do so. This is essentially true where, as in this case, the only issue (so called) submitted to the jury was as to the measure of damages, the court reserving to itself the question of liability. Hence if upon consideration of the undisputed facts plaintiff does not show a right to recover, then the court necessarily erred in rendering judgment that plaintiff should recover."

This proposition, in effect, presents for the first time a general demurrer to plaintiff's petition. If such a demurrer had been presented below should it have been sustained? If so, the proposition is correct as a legal one, and the judgment should be reversed and the cause dismissed. We, however, do not believe that the petition fails to state a cause of action.

The appellee alleged, in substance:

"That appellee was the abutting owner of a lot on Washington street in Waxahachie, a city of 10,000 inhabitants; that said lot was on one of the most prominent streets in the city; that appellant, about September, 1913, built along and over said street a high bridge or viaduct, which was permanent, and extended several hundred yards along said street and in front of the lot of appellee, at which point the viaduct was about 25 feet high and completely obstructed about one-half of the street, and operated cars over said viaduct every 30 minutes; that said viaduct was a nuisance in said street and practically destroyed the same and the lot of appellee for either residence or business purposes; that the construction of the said viaduct was without the consent of appellee, without compensation to her, and was wrongful and unlawful and her lot had been damaged thereby $3,000; that prior to the construction of the said railway the east side of said Washington street immediately in front of or facing the said viaduct was valuable business property, and business interests and houses were being builded and extended along the west side of the said street, but that the building of said viaduct and operation of cars thereover, as aforesaid, has almost totally ruined the said east side of said street for business purposes, especially the property of plaintiff as above described."

These allegations show that appellee had suffered damage from the building of the railway by lessening the value of the lot, and it was so found by the jury, which made the appellant liable and justified the court in so finding.

In Powell v. Railway Co., 104 Tex. 219, 135 S. W. 1153, 46 L. R. A. (N. S.) 615, where a street was obstructed, the travel was diverted, and a merchant's trade was lessened thereby, the court, speaking through Mr. Chief Justice Brown, citing article 1, § 17, of our Constitution, said:

"No person's property shall be * * * damaged for * * * public use without adequate compensation being made, unless by the consent of such person"

—and quoting from Lewis on Eminent Domain, par. 354, page 646, as follows:

"The conclusions thus stated in the first edition have been verified by numerous decisions since rendered, and, we believe, without any material dissent, except in the case of Missouri, as shown below. If a street or public way communicating with plaintiff's premises is obstructed elsewhere than in front of the plaintiff's property, as by a viaduct or bridge, or approach thereto, or by a railroad crossing a street in a cut or on an embankment, or otherwise, and the result of such obstruction is to render such property less valuable either to sell or to use, then the property is damaged, and compensation may be recovered to the extent of the depreciation"

—and said:

"The ownership of the lot abutting upon the street carried with it as property the right of free and unimpaired access thereto and egress therefrom, and whatever impaired that right and caused a depreciation of the value of the lot constituted damage to the lot within the meaning of the Constitution. O'Brien v. Central Iron Co., 158 Ind. 218 [63 N. E. 302, 57 L. R. A. 508], 92 Am. St. Rep. 305; Gulf, C. & S. F. R. R. Co. v. Fuller, 63 Tex. 467. It was not necessary that the obstruction should be in front of or near to plaintiff's property, but the test of the right to recover in this action is: What effect did that crossing and the con-

dition in which it was have upon the value of the plaintiff's property and upon the exercise of his right of egress and ingress?"

Every property owner whose property abuts on a public street has an interest in the full width of such street; if such street is obstructed by a railway in such a manner as to damage the sale or rental value of such property, has his recourse for damages. Here, the railway and viaduct occupied a part of said street, which was an obstruction to that extent. It diverted to some extent travel from Washington street and prevented the east side of same, opposite appellee's lot, from being built up and improved, which affected appellee's lot, and the jury found that it was damaging to appellee's lot.

The cases of City of Texarkana v. Lawson, 168 S. W. 867, and Railway Co. v. Hardin, 168 S. W. 1017, follow the rule announced in Powell v. Railway Co., supra, all of which sustain the doctrine that whether such structure in the street under the circumstances damages abutting lots is a question for the jury. In the case of Burton Lumber Co. v. City of Houston, 45 Tex. Civ. App. 363, 101 S. W. 823, the jury found, under the evidence, against the abutting owner, and the case was affirmed by the appellate court, but we apprehend had the jury found for the abutting owner a like result would have followed.

[3] Complaint is made by appellant to the admission of the testimony of T. P. Whipple, and other parties, for the reason that such evidence would not be considered as a basis for damages and submits the following proposition:

"The fact, or supposed fact, that the construction of the viaduct upon the east side of Washington street would prevent the erection of business houses on the east side of the street by the property owners thereof, and that by reason of such failure the value of plaintiff's lot on the west side of the street was decreased in value is not an element of damage to be considered by the jury in arriving at the damage to which plaintiff was entitled. Such testimony is purely speculative, vague, and remote and highly prejudicial, and the objection urged to the introduction thereof should have been sustained."

The proposition submitted indicates the nature of the testimony, with the exception of Whipple, who further testified that the structure was unsightly. If the building of the viaduct had the effect of preventing the improvement of the east side of said street, as testified to, it would be proper for the jury to consider it in determining the damages resulting therefrom to appellee's property. In Railway Co. v. Hardin, supra, the court said:

"It is immaterial how important to the public the building of this viaduct may have been; that fact is no defense against the claim for damages by a private individual who has sustained special injury by reason of its construction. Powell v. Ry. Co., 104 Tex. 219, 135 S. W. 1153, 46 L. R. A. (N. S.) 615."

So whatever act in building the viaduct carried special damage to appellee's lot is legitimate evidence, and we are of the opinion that there was no error in admitting said testimony.

[4] Complaint is made of the court's refusal to submit to the jury the following special charge, viz.:

"You are charged that if the jury believes from the evidence that plaintiff's property, being said lot described in plaintiff's petition, is worth as much now as it would be worth if the defendant's railway was not built and operated on Washington street in the manner that it has been and is being done, you will answer special issue No. 3, submitted to you by the court, in the negative (that is, 'No')."

This instruction was asked in lieu of issues 1 and 2 submitted by the court, to which complaint is also made. Said issues, in effect, asked the jury what the value of the property was immediately before and immediately after the construction of the railway.

There was no error in refusing the special charge and in submitting issues 1 and 2, for the measure of damages is determined by the value of the lot immediately before and its value immediately after the construction of said railway. Burton Lumber Co. v. City of Houston, supra.

The verdict of $500 is attacked as excessive, but no passion or prejudice is shown in its rendition. It is much less than could have been assessed from the evidence. The evidence on the whole case supports the findings of the jury, and, as it is strictly a fact case and the jury having found in appellee's favor, the judgment is affirmed.

Affirmed.

### On Rehearing and for Additional Conclusions of Fact.

The appellant complains of the overruling of its first assignment of error, and says that in the opinion our statement of the charging part of the petition in question in the latter part of it (the last seven lines) failed to show whether or not it is a quotation from the petition, or whether it was a conclusion of the court. The part objected to is a quotation from plaintiff's petition, and is not a conclusion of this court.

[5, 6] It is also objected that in our conclusion of fact we used this language:

"The structure prevented the building of residences or business houses on the east side of the street, and plaintiff had no interest on said east side."

In reference to this finding we think we were justified in so finding from the following testimony:

"T. P. Whipple testified that the viaduct began at Madison street in Washington street, on solid cement, and continued south 120 feet gradually rising on said cement till the iron structure began, and then for some distance there are iron girders, and right in front of this particular lot there were no girders from one post to the other; it is open; there are girders above that though, right straight through, running back so as to strengthen the structure; the crosspieces of iron and ties and rails are put on top of the structure. It is permanent. It is a very unsightly structure and immediately in front of the building, if you

would put one up, you could not look out the front without seeing this unsightly structure. It has destroyed all possibility of any kind of business ever being done on the left hand side of the street, where the viaduct is. There are stringers along down the viaduct till it gets in front of the lot in controversy, then there is an open space at that point, a space in there right on the tracks of the Trinity & Brazos Valley Ry. Now, this lot is right across there and there is no way to get into those houses (speaking of houses on the east side of the street) except to go right under the viaduct, and you could only go on foot; you could not drive in under there. It closes up the fronts of those houses. The overhead trains frighten teams. I have seen them frightened; I think the travel has been decreased. The retail department on ·that street is not accessible as it was before the construction of the interurban. Loading and unloading goods would be dangerous. Passenger cars, express and freight cars, and work trains are run over the appellant's railway and over the viaduct. Appellant is a common carrier of passengers and freight for hire, using this viaduct for that purpose. I have shipped some little freight over the road. The lot in controversy is a business lot. Before the viaduct was constructed there was some business there. The travel on a street affects the rental value of property. The more travel there is the more desirable the property is. The travel on that street has decreased since the building of the viaduct sufficient to impair the value of . that lot."

Will Hancock testified, as property owner on said street, and interested in its development:

"That the value of the lot in question was, before building of the viaduct, $10,000, and that its value depreciated about one-fourth after the building of the viaduct; that a man would not want to buy that property for an investment with that viaduct in front of it, for it affects the value of the property, and I would not want it. The 48 feet fronting on Washington street could not be used at all, other than as an approach to the part fronting on Rogers street. The viaduct narrows the street and that has a tendency to decrease the value of property facing it. No business houses have been built on the east of the street along the viaduct since it was built, and . the Farley blacksmith shop has been moved off—the viaduct is right up against the sidewalk, on the east side of the street. The traffic has been decreased on Washington street since the building of the viaduct; you seldom see teams on that street now. I think the town was building in a business way down that [Washington] street up to the time the viaduct was built."

[7] It is urged that the evidence fails to show that ingress and agress to and from the lot and the light and air is interfered with, and appellee is not entitled to recover damages. We are of the opinion that these are not the only elements necessary for a recovery, where damage is done to private property by the construction of a public utility. The appellant, in constructing this viaduct, appropriated 10½ feet on the street which, in effect, obstructed that much of it on the east side, rendering such part useless for service as a street for individuals and vehicles and from the character thereof, lessening the value of appellee's lot and rendering it undesirable, as numerous witnesses testify. The viaduct was raised above ground and crossed two railroad tracks, and was authorized by the city council, but such permission of the council did not absolve the appellant from such damages it produced by the construction of the viaduct.

As before said, we think from the evidence produced and the circumstances shown the jury were justified in awarding a verdict for damages; therefore the motion for further findings of fact and for a rehearing is overruled.

---

⊜⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes